## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **LOUIS VUITTON MALLETIER, S.A.S.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NUMBER** |
| ) | **1:23-cv-02818-VMC** |
| **CONTOUR 5151 ONH, LLC, a Georgia** ) | |
| **Limited liability company d/b/a** ) | |
| **OLD NATIONAL DISCOUNT MALL;** ) | |
| **PRETAS DEDVUKAJ;** ) | |
| **ABC CORPS. 1-10; and JOHN DOES** ) | |
| **1-10 individually,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT CONTOUR 5151 ONH LLC

Defendant CONTOUR 5151 ONH LLC ("Contour 5151") hereby files this response in opposition to the Motion for Sanctions against Contour 5151 [Dkt 122] (the "Motion") filed by Plaintiff LOUIS VUITTON MALLETIER, S.A.S**.** ("LV"), showing the Court the following:

### BACKGROUND

LV filed a Motion seeking sanctions against Contour 5151 pursuant to Fed. R. Civ. P. 37(b)(2), (c)(1), (e)(1)-(2), and the Court's authority for alleged violations of discovery. LV attempts to spin small issues into evidence of major discovery

violations in hopes that the Court will strike Contour 5151's Answer or impose other extreme sanctions.

As an example, one of LV's concerns is the alleged "destruction" of Marshal Rhodes' termination documents. It is unknown whether these termination documents ever existed. Only one person, Latasha Dia, testified that she created termination documents. [Doc. 122-8], at 337:12-16. No other witness has seen or can confirm the existence of these documents. In fact, Pete Dedvukaj testified that he does not believe these documents ever existed. [Doc. 122-3], at 325:1-4. Therefore, it is entirely plausible that Ms. Dia is simply misremembering creating these records. Even if termination documents were created, Ms. Dia testified that she took them with her when she traveled to meet with Ms. Rhodes. [Doc. 122-8], at 337:19-339:4. These documents never made it into Contour 5151's records, and Ms. Dia no longer has possession of them. *Id*. Regardless, there was absolutely no deletion or destruction of the termination document. [Doc. 122-8], at 339:1-4; [Doc. 122-3], at 325:11-13. If a termination document existed, this simply shows that a single document has been misplaced or lost.

The alleged loss of this one record creates no issue in this case because multiple witnesses testified and provided evidence regarding Ms. Rhodes' termination and the reasons therefor, which are wholly unrelated to any of the issues in this case. [Doc. 122-8], at 336:3-24; [Doc. 122-3], at 323:19-25. Nonetheless, LV

asks this Court to ignore the substantial evidence on this issue and, if not strike the Answer, instruct the jury that it must believe LV's fictions and fabrications of what they would like the document to say, which is directly contradictory of all available evidence.

The same is true, as detailed below, for the other allegedly "destroyed or withheld" evidence. There are significant questions of fact as to whether these documents were ever in Contour 5151's possession, and how they were treated or produced. LV wants to use these few issues, none of which have prevented actual discovery on these issues, to present Contour 5151 as willfully and intentionally avoiding its discovery obligations. This is simply not the case, and no sanctions are appropriate here. LV's arguments that Contour 5151 has been resistant to and uncooperative in discovery are simply not true, as shown in LV's own exhibits to the Motion. *See, e.g.,* [Docs. 122-10 and 122-11] (detailing efforts to resolve production issues for relevant text messages created by LV's overly broad requests).

Indeed, far from being unwilling to participate in discovery, Contour 5151 produced well over 43,000 pages of documents in this case. [Doc. 122-10], at 3. Contour 5151 also provided multiple witnesses who have sat for many hours of deposition, offering testimony relating to the very issues on which LV is attempting to seek sanctions. There has been no willful effort to frustrate discovery here, nor any bad faith by Contour 5151. Contour 5151 took no affirmative efforts to spoliate

evidence. Moreover, the same evidence, or in some cases better evidence, than that which LV alleges to be spoliated is available from other sources and was provided to LV. The Motion has no merit and should be denied in toto.

## LEGAL STANDARDS

Contour 5151 generally does not dispute LV's recitation of the general legal standards referenced in Section III.A-D in its Motion. However, LV failed to provide the legal standards relevant to this Court's authority to order the severe sanctions requested by LV. A court's discretion to enter sanctions under Rule 37 "is not unbridled." *Wouters v. Martin Cnty., Fla.*, 9 F.3d 924, 933 (11th Cir. 1993); *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1366 (11th Cir. 2008). Extreme sanctions, such as dismissing a claim, a party, or entering default judgment should only be granted as a **last resort**, and only ordered where noncompliance with prior discovery orders is due to willful or bad faith disregard of those orders. *See Wouters*, 9 F.3d at 933; *In re Polypropylene Carpet Antitrust Litig.*, 181 F.R.D. 680, 696 (N.D. Ga. 1998). It is abuse of discretion to enter a severe sanction where a less drastic sanction would suffice. *Wouters,* 9 F.3d at 934. Similarly, entering an adverse jury instruction because a party's failure to preserve evidence is only warranted when the absence of that evidence is predicated on bad faith. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009). In the absence of either a motion to compel discovery or an order compelling discovery, it is inappropriate to enter an

4

order rendering default judgment as a discovery sanction. *United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1318 (11th Cir. 1997). "Bad faith" in the context of spoliation is not just negligence, or even gross negligence. *See Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023); *Mann*, 588 F.3d at 1310. And "willfulness" is defined as the *decision* to not fully comply with a court's order. *See Johnson v. New Destiny Christian Ctr. Church*, Inc., 324 F.R.D. 404, 415 (M.D. Fla. 2018).

Furthermore, Rule 37(e) has a "two-tiered sanctions regime," where only lesser sanctions are available under Rule 37(e)(1) and more severe sanctions are available under Rule 37(e)(2). *Skanska*, 75 F.4th at 1311. The lesser sanctions under (e)(1) may be ordered where the loss of electronic evidence causes "prejudice" and justifies sanctions **"no greater than necessary to cure the prejudice."** *Id. (emphasis added)*. The more severe sanctions under (e)(2), however, only can be ordered where there is a finding of "intent to deprive" (i.e. bad faith), and is only warranted on a finding that a party destroyed evidence "*for the purpose of hiding* adverse evidence." *See Skanska*, 75 F.4th at 1312 (emphasis in original).

Furthermore, LV's continued references to *Collins-Williams v. Contour Eastwyck, LLC*, No. 1:20-CV-3129-CAP, 2022 WL 17828934 (N.D. Ga. Dec. 15, 2022), is improper. LV introduces that prior order against a different entity as evidence of its allegations of wrongdoing here, seeking to use that Order as character

5

evidence. Its argument is essentially: "don't look to the facts of this case – look at this Order from a wholly unrelated premises liability case for a different entity operating under the guidance and instruction of different counsel. That completely separate entity behaved poorly according to Judge Pannell, so the Court should sanction Contour 5151 here because it claims there is a document or two missing." The absurdity of this argument is readily apparent. Instead of attempting to litigate the ruling handed down by Judge Pannell in a completely separate case involving an entirely different entity, Contour 5151 will focus on the facts of this case. While this Court is certainly entitled to take judicial notice of another court's order, it can only take such notice for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of the litigation. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

## ARGUMENT AND CITATION OF AUTHORITY

### A. There has been no spoliation or withholding of information related to Marshal Rhodes's termination.

LV begins by asserting alleged "facts" have arisen out of discovery relevant to Marshal Rhodes, but reviewing the full context of LV's own citations show that these are far from undisputed statements of fact. As an initial matter, LV leaves out the critical element that the reasons for Marshal Rhodes's termination were solely related to her performance as a manager at an unrelated entity (an apartment complex in Alabama) after she was no longer working for Contour 5151 managing Old

6

National Discount Mall (the "Mall"), and had nothing to do with the Mall. [Doc. 122-8], at 336:3-24; [Doc. 122-3], at 323:19-25.

LV next asserts that Contour 5151 did not evict tenants that it knew sold counterfeit products. The evidence does not support this. While the included citation does support LV's assertion in that it agrees that one tenant was not terminated after allegedly being found with counterfeit goods, later testimony in the same exhibit shows that there is a question as to the accuracy of that and whether counterfeit goods were actually found. [Doc. 122-3], at 300:14-16.

More critically, as this issue is central to the sanctions sought by LV, LV asserts that Marshall Rhodes took bribes from people in the Mall selling counterfeit goods, and that multiple people involved with Contour 5151 were fully aware of those bribes being made. Nothing could be further from the truth. Instead, the evidence shows that Latasha Dia received an anonymous text saying that a third person gave money to Marshal Rhodes for the front booth. [SEALED Doc. 123-2]; [Doc. 122-8], at 311:11-315:1. However, far from creating the taking of bribes as established fact, Ms. Dia was clear in her deposition that no evidence supporting these anonymous hearsay upon hearsay allegations of bribes was ever found or provided. [Doc. 122-8], at 311:11-16; 315:5-10; 334:4-10.

As for the allegation that "most of Contour's employees knew about Ms. Rhodes's conduct," again, LV seeks to conflate people's knowledge of the existence

of unfounded hearsay and rumors into actual fact that these bribes existed and were known to exist. Each and every citation in the Motion shows that the identified Contour 5151 representatives, Pete Dedvukaj, Latasha Dia, Marcus Foucha, Carla Henderson-Miller, and David Dedvukaj, had only heard rumors and unsupported allegations from third parties or unknown sources suggesting that Ms. Rhodes had accepted bribes. *See* [Doc. 122-1], at 9. It is clear from other testimony that these allegations were never substantiated. *See, e.g.*, [Doc. 122-3], at 322:21-22; [Doc. 122-8], at 311:11-16; 315:5-10; 334:4-10. LV alleges there was no investigation, but the evidence shows that Ms. Dia took efforts to look into this and that others at Contour also took actions, such as internal communications and investigations. [Doc. 122-8], at 315:8-316:17; [Doc. 122-25], at 274:25-275:11.

Contour admits it has not produced any termination documents, but that is because either Ms. Dia is misremembering and no such document was created, or because the document she created was lost during her travels and not properly saved to the system. There is no evidence at all that the document was intentionally destroyed or withheld; in fact, the sworn testimony shows the opposite. [Doc. 122-8], at 339:1-4; [Doc. 122-3], at 325:11-13. Nothing here supports sanctions.

### 1. Argument for Sanctions pursuant to Rule 37(e)

To establish a violation of Rule 37(e) to impose sanctions, four threshold elements must be met: (1) there must have been a duty to preserve electronically-

stored information ("ESI"); (2) the ESI must have been lost or destroyed; (3) a party failed to take reasonable steps to preserve such ESI; and (4) *the ESI cannot be restored or replaced through additional discovery*. Fed. R. Civ. P. 37(e) (emphasis added). As noted above, a court may only award sanctions under Rule 37(e)(1) if it finds there is prejudice to another party from loss of information. Fed. R. Civ. P. 37(e)(1). Under (e)(2), a court may only award sanctions if it finds that the offending party acted with the "intent to deprive" the opposing side of ESI. Fed. R. Civ. P. 37(e)(2). To determine whether a party was prejudiced under Rule 37(e)(1), the Court must evaluate "the information's importance to the litigation." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment. Under Rule 37(e)(2), an "intent to deprive" cannot be inferred from a "finding of negligence or gross negligence." *Id*.

LV has failed to meet the threshold elements of Rule 37(e). As an initial matter, Rule 37(e) does not even apply to the purported termination document, as Rule 37(e) applies to electronically-stored information (ESI). If a termination document was created at all, Ms. Dia testified that she created it and took a hard copy with her to meet with Ms. Rhodes, and it was lost in that process. [Doc. 122-

8], at 337:19-338:20. Nothing was ever uploaded to Contour 5151's system, so there is no ESI in this instance. *Id.*, at 338:8-20.

Even if it was considered ESI, LV has failed to establish at least the first and fourth elements under Rule 37(e). LV argues the alleged Rhodes termination document was lost due to a failure to preserve evidence. The argument in the Motion seeks to create a presumption that Contour 5151 and/or its prior counsel Nelson Mullins failed to properly preserve documents generally and this document specifically. First, Contour 5151 had no duty to preserve Ms. Rhodes's termination letter because she was terminated due to her role at a separate property in Alabama, which was wholly unrelated to her previous position at the Mall. As such, Contour 5151 had no reason to believe it needed to preserve that letter, if it ever existed, for use in a trademark infringement case related to the Mall brought by LV.

Moreover, there is no evidence that would be in that document, if in fact it was created, that cannot be obtained by other means, consistent with the fourth element of Rule 37(e). Latasha Dia, the person who fired Marshal Rhodes, testified extensively as to how and why she was fired. *See, e.g.*, *id.*, at 336:3-24. Peter Dedvukaj has also testified as to Marshal Rhodes's termination based on her performance at the Alabama apartment property. *See, e.g.*, [Doc. 122-3], at 323:19-

25. Marshal Rhodes herself is scheduled to be deposed on August 25, 2025.[1]  All of these witnesses are at least equal, if not far superior, sources of evidence as to the cause, means, and method of her termination as any generic termination form Ms. Dia may have created.

### a) Sanctions under Rule 37(e)(1) are not appropriate.

Critically, even if Rule 37(e) could apply to this termination document, LV's evidence does not justify sanctions because the loss of this termination document causes no harm whatsoever to LV. In seeking sanctions under Rule 37(e)(1), LV speculates without any evidence that the documents "may indicate" that she was fired for failing to evict counterfeiters, taking bribes, actively selling counterfeits (for which LV provided no support, not even the speculation and rumors it used for the other allegations), or other conduct relevant to the litigation. But Ms. Rhodes was not fired from her position at the Mall—she was fired from her position as manager of an apartment property in Alabama. There also is no need to speculate as to the stated cause in her termination documents[2] because there is clear testimony

---

[1] A primary support of LV's argument is that Ms. Rhodes's deposition was rescheduled and canceled due to misunderstandings or miscommunications with Nelson Mullins, some of which arose out of this Court's rulings. This Court addressed those arguments and clarified its rulings at the June 27, 2025 hearing and subsequently ordered that LV could depose Ms. Rhodes. That deposition has been scheduled. Nelson Mullins has also informed LV that Ms. Rhodes does not have any responsive documents.

[2] Additionally, it is unrealistic to assume that any corporate termination records of an employee would say anything other than "terminated for cause" or "terminated

that she was terminated because there was no progress on occupancy and collections at the Alabama apartment complex she was then managing. [Doc. 122-8], at 336:3-24. Ms. Dia expressly testified that Ms. Rhodes was not terminated because of allegations of taking bribes. *Id.* at 336:25-337:10.

There is no prejudice to LV. Rather, LV is seeking sanctions because it does not like the evidence it has repeatedly received: that Ms. Rhodes was fired for performance issues unrelated to the Mall. LV desperately wants to find evidence that the hearsay and rumors about bribes are more than unhappy tenants making up claims about the landlord. Because LV can find no such evidence, it is asking the Court to impose sanctions demanding the jury take these unfounded rumors as true.

> b)      *Sanctions under Rule 37(e)(2) also are not appropriate.*

LV fails to show that Contour 5151 acted with the "intent to deprive" (i.e., in bad faith) LV as it relates to the Rhodes termination document, as required for sanctions under Rule 37(e)(2). There is a unifying legal prerequisite to all of LV's requested discovery sanctions flowing from spoliation: the Court must find that Contour 5151 acted in bad faith. *See Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F.Supp.2d 1273, 1277 n. 3 (S.D.Fla.1999) (recognizing "Eleventh Circuit precedent which clearly imposes a requirement of bad faith for the imposition of sanctions in

---

for performance"—it certainly wouldn't say "terminated for taking illegal bribes and conspiring with counterfeiters at your last post," which is what LV would like the Court to believe.

connection with the destruction of evidence"); *accord Bashir v. Amtrak*, 119 F.3d 929 (11th Cir.1997). In the spoliation context, bad faith is not negligence, or even gross negligence. *Skanska*, 75 F.4th at 1311; Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.

LV argues that Contour 5151 acted in bad faith to deprive LV of this evidence, but nothing in the evidence supports this allegation. First, LV declares there is no dispute that the termination document once existed, but as shown above, that is simply not the case. Speculating the worst, LV argues that "it is more than reasonable to presume that these documents contain information related to Ms. Rhodes's conduct while managing the Market." [Doc. 122-1], at 14. In reality, this is a wholly unreasonable supposition. Even if this termination document stated some specific elements of performance, rather than simply "termination for cause," there is no reason whatsoever to assume, contrary to Ms. Dia's testimony, that the cause would relate to her prior position at the Mall. This is especially true when the Court understands that the "evidence" proffered by LV is purely unfounded rumors that could not be substantiated about her prior position. Instead, Ms. Dia testified that Ms. Rhodes was fired due to performance issues with her then-current position of managing an apartment complex in Alabama. [Doc. 122-8], at 336:3-24.

Second, there is no evidence that Contour 5151 took any affirmative act to destroy this document or intentionally failed to save it electronically for the purpose

13

of preventing its discovery. If Contour 5151 wanted to destroy or hide the existence of this document, Ms. Dia would not have testified to its potential existence. If Ms. Dia was going to intentionally take steps not to upload the document for nefarious reasons, why create it at all?  She terminated Ms. Rhodes in person; no document was needed. LV essentially seeks to have the Court ignore the evidence and instead adopt LV's supposition of nefarious intent based upon nothing more than its thoughts of what the document could possibly say. Such supposition can hardly form the basis of sanctions against a party, especially not striking the party's Answer or instructing the jury that a party spoliated evidence.

Third, a duty to preserve documents does not require perfection. Even a litigant fully complying with the duty can accidentally lose documents, especially when the document itself is completely unrelated to the litigation at hand and was created for a termination of an unrelated job for unrelated reasons. Fourth, the fact that documents can be "simply misplaced" is not unexplained, as LV asserts, nor could it only be the result of bad faith as argued. [Doc. 122-1], at 16. Ms. Dia testified that the document was put somewhere during her travel day and she cannot find it, and it did not get properly uploaded because she was traveling and not at the office. [Doc. 122-8], at 337:19-339:4.

LV suggests that Ms. Rhodes was not fired for unrelated reasons, because she was assigned to another position. The evidence, however, shows that she was put in

a new position of manager of an apartment property in Alabama during the time the Mall was closed. It is that position from which she was terminated. [Doc. 122-8], at 336:3-24; [Doc. 122-3], at 323:19-25. LV then asserts that Contour 5151's "own employees believed she was fired because she accepted bribes." [Doc, 122-1], at 16. This is a bald misrepresentation of the cited testimony. LV cites to Marquis Foucha, who states that he advised Pete Dedvukaj about the rumors and Pete stated that if they were discovered to be true he would have her prosecuted. [Doc. 122-21], at 213:10-19. He does then testify that after he had that discussion with Pete, he thinks that Ms. Rhodes was fired, but he does not state that he thinks she was fired because of bribes, or even that he knows she was fired, just that he did not see her around after that. *Id.*, at 213:25-214:5. LV also cites to David Dedvukaj, whose testimony is even less supportive of this allegation—he simply testifies that he heard rumors of bribes and that Ms. Rhodes was fired at a time after he heard about them. [Doc. 122-19], at 161:21-25. As the Court is well aware, correlation is not causation.

Interestingly, LV then again asks the Court to punish Contour 5151 simply because a different entity was previously sanctioned on different grounds in a premises liability case, and suggests that this Court should use that prior matter to presume that Latasha Dia is "not credible" and "untrustworthy." [Doc. 122-2], at 16. This is an interesting position considering the testimony of Ms. Dia is the only

evidence whatsoever of the existence of the alleged termination document foundational to LV's Motion.

In sum, LV has not shown that Contour 5151 acted in bad faith with respect the loss of the Rhodes termination document, if it ever existed. Accordingly, sanctions pursuant to Rule 37(e)(2) are inappropriate.

### 2. Sanctions are not warranted under Rule 37(b) or the Court's inherent authority.

Sanctions are not appropriate under Rule 37(b) or the Court's inherent authority because that requires the termination documents to be in Contour 5151's possession. They are not. To the extent they ever existed, Contour 5151 does not have them, and they cannot be found. Contour 5151 has not failed or refused to comply with any orders or taken any intentional or willful actions to hide evidence; it simply cannot produce what does not exist. Contour 5151 has provided, however, ample evidence about Ms. Rhodes's termination, the reasons for termination, and information about the bribery rumors. Further, Ms. Rhodes herself remains to be deposed. There is simply no harm to LV and no grounds for any sanctions or jury instructions as to nonexistent evidence or unsupported allegations.

## B. There is no basis for sanctions relating to any *Luxottica* documents.

LV next seeks to persuade this Court to enter sanctions based on Contour 5151's lack of information about a completely unrelated case against a completely unrelated entity filed years before Contour 5151 even thought about purchasing the

16

Mall at issue. LV contends that Contour 5151 "failed to produce key documents indicating its knowledge of counterfeiting at the Market…." [Doc. 122-2], at 17. However, the documents that it contends Contour 5151 failed to produce do not reference counterfeiting at all.

LV relies on a chain of emails which it obtained from Contour 5151's lender to show that Contour failed to provide responsive documents which should have been captured by a search for "Luxottica" or "lien" as requested in their discovery. Critically, though, the words "Luxottica" and "lien" do not appear on the face of any of the emails in LV's Exhibit GG. *See* [SEALED Doc. 123-7]. LV's exhibit does include documents that Plaintiff contends are attached to some of that email chain, although that is not clear from the emails. These include two lien releases for a judgment lien against the former unrelated owners of the Mall that was paid as part of the purchase. *Id.*, at 28, 29. Critically, nothing in these releases identifies anything about counterfeiting, and would give no knowledge whatsoever as to "counterfeiting at the Market."

LV has tried extensively during fact discovery in this case to turn the mere existence of a lien against someone else paid at a closing into evidence of Contour 5151's deep and thorough knowledge of counterfeiting at the Mall. However, there is simply no reason that a purchaser would go research the litigation that gave rise to an old judgment against a seller, and Contour 5151 expressly testified that it did

not look into this judgment. Deposition of Peter Dedvukaj, attached hereto as Exhibit A, 121:1-5. This is especially true when the record is clear that the purchaser did not intend to use the property for the same purposes and had no reason to learn the old business. *Id.*, at 63:3-65:15. The fact is that Contour 5151's interest was simply ensuring that the lien was paid off and clear title could be provided at closing.

LV additionally seeks sanctions on the grounds that these closing emails on which they rely were not preserved for production, alleging that the two individuals in the email, Nora Prekelazaj and Joe Nathan, knew of their duty to preserve after the filing of the Complaint (in 2023) or even as early as the raid (late 2022). Ignoring the issue of whether any reasonable person would connect a raid or a lawsuit by Louis Vuitton with a need to preserve real estate closing paperwork referencing a judgment against a former owner, the latest date of the emails in LV's Exhibit GG is October 9, 2019. If these emails were lost or deleted, it is likely that occurred in the more than three years between the last email and the raid or the nearly four years prior to this litigation. Moreover, there was no duty to preserve these emails for future litigation brought by LV, which could not have been known to Contour 5151 at the time of closing.

There is no spoliation here, nor is there any effort by Contour 5151 to hide information about this lien. The judgment was not a concern to Contour 5151 beyond title issues, nothing in the lien release provides any suggestion of counterfeiting, and

Contour 5151 did not have a duty to research the background of this judgment lien against the previous owner. LV's requests that the Court use these emails, which may have included these lien releases, as evidence that Contour 5151 "lied when they denied having knowledge that the Market was a 'hotbed for counterfeiting' based on the Luxottica case" is patently absurd. [Doc. 122-1], at 18. Nothing in the lien release provides any knowledge of counterfeiting, much less evidence that there was a "hotbed of counterfeiting" at the Mall. Nothing in the purchase, closing, or lien payoff process required Contour 5151 to investigate the reasons for the judgment or prior litigation against the seller. Importantly, Contour 5151 expressly did not do that. Exhibit A, 121:1-5.

Finally, of course, LV itself admits that it was not prejudiced by these documents not being found and produced by a third party. What LV asks is that the Court presume, without any evidence, that additional documents showing knowledge must exist and have been hidden or destroyed. Given that LV's only basis for that presumption is this Exhibit GG, which does not itself show any knowledge of counterfeiting, and because thousands of pages and hours of depositions have been provided to them, there simply is no harm to LV. Again, LV knows there is no evidence of this and relies solely on supposition in an effort to cripple Contour 5151's meritorious defenses in asking the Court to assume that lack of evidence is

due to sanctionable conduct rather than accepting the simple answer that Contour 5151 did not need to investigate the Luxottica case when it purchased the property.

## C.   There is no basis for sanctions relating to any LV Letters.

LV seeks sanctions against Contour 5151 for the alleged alteration of metadata related to one letter sent by LV, and argues for additional sanctions based on its allegation that Contour 5151 spoliated evidence of other letters. Looking first to the photos and metadata, LV argues that these photos were found "scattered within Contour's files." [Doc. 122-1], at 19. These "scattered" photos are, of course, produced in sequential Bates numbers, and were produced in connection with other screenshots from Ms. Henderson-Miller's phone, so they are hardly "scattered within files." *Id.*; [Doc. 122-38].

LV's actual issue with these documents is that at some point in the production process, the metadata changed to reflect Nelson Mullins' production information. [Doc. 122-1], at 19, note 6. Contour 5151 undertook no effort to spoliate metadata and certainly did not instruct Nelson Mullins to alter metadata. Contour 5151 cannot say whether Nelson Mullins was even aware that the metadata had been altered. Of course, the best and easiest recourse would have been for LV's counsel to reach out to Nelson Mullins and ask for the original metadata or native files. There is no evidence that this occurred, at the time of production or at any time prior to filing

LV's Motion in violation of the Court's requirement to meet and confer on all discovery disputes.

Instead, LV seeks sanctions based on what it argues to be intentionally altered metadata and Ms. Henderson-Miller's inability, years later, to remember specifics about these screenshots at her deposition. There is no evidence whatsoever to support an allegation that Contour 5151 has acted to change or withhold evidence, and certainly no evidence that it was done intentionally to deprive LV of evidence. Contour 5151 produced the photos. [SEALED Doc. 123-8]. Contour 5151 acknowledged and identified what was done with the letter. [Doc. 122-37], at p. 5. Contour 5151 did not change or alter any metadata on any production, and to the extent that happened at Nelson Mullins it was not done at the instruction of Contour 5151 nor was it done to prevent LV from getting evidence—evidence that likely could have been obtained if LV had simply pointed out the issue rather than seeking extreme sanctions.

As for LV's allegation that Contour 5151 spoliated or withheld other letters, this is simply not true. LV asserts that it "delivered a stack of letters to … Amanda Rivera" and delivered one other letter by U.S. Mail. [Doc. 122-1], at 15; [Docs. 122-41, 122-42, 122-43]. However, LV's own evidence fails to support this allegation. LV has provided one singular letter, not a "stack," that purports to be accepted by Security Officer Amanda Rivera. [Doc. 122-41]. There is of course no authentication

of this signature, nor any indication of what Ms. Rivera did with this one letter. LV also provides, as support for this allegation, a letter NOT addressed to Contour 5151, but rather addressed to, and apparently delivered to, a tenant in Booth C1. [Doc. 122-42]. Even if this letter was authenticated, which it is not, there is no reason for Contour 5151 to have received a copy of this letter. Finally, LV states that it delivered a letter by U.S. Postal Service, but the only evidence LV provides is proof that unknown mail was <u>not</u> delivered in LV's prior attempts by UPS. [Doc. 122-43]. LV provides no evidence of the letter itself, and no evidence that it was ever sent by the U.S. Postal Service after the failed UPS deliveries. LV certainly provides no evidence that any letter was **delivered** to Contour 5151 by the U.S. Postal Service.

Therefore, based only on the potential receipt of **one** letter by the mall security officer, not any actual officer or director of Contour 5151, and with no information as to what was done with this letter, LV asks this Court to impose extreme sanctions for Contour 5151's purported failure to produce letters it cannot even show were sent, or which were sent to other unrelated entities.

**D.    There is no basis for sanctions relating to Interrogatory responses.**

LV's fails to show that any type of sanctions flowing from allegedly false interrogatory responses are justified because any error was harmless. In reviewing whether a discovery sanction is warranted under Rule 37(c)(1), a court asks whether the failure or delay was "substantially justified" or "harmless". *OFS Fitel, LLC v.*

22

*Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008). Contour 5151 does not dispute that certain dates were incorrect in Interrogatory responses and were later corrected. This was a simple error, and not an effort to prevent LV from obtaining discovery. Contour 5151 correctly identified the individuals working at the Mall and the order in which they worked, but was in error as to the specific dates. Nonetheless, LV was provided the information necessary for its investigations.

With regard to Joe Nathan, LV argues that he is Contour 5151's CFO, acting manager and co-owner. [Doc. 122-1], at 24. He is the CFO, or acts like a CFO, for the main Contour entity, not Contour 5151. [Doc. 122-3], at 18:20-25. Additionally, the issues with Mr. Nathan's texts and his relationship with Contour 5151, as well as Contour 5151's production of his non-text information, was already detailed to and addressed by this Court. [Doc. 122-11].

None of this causes any harm to LV's case, all positions and statements were taken and made in good faith, and the errors in dates were just that—errors, which have been corrected. LV starts this argument by once again referencing Judge Pannell's order in *Contour Eastwyck*, and hopes that this Court will use that order, entered against a different entity, represented by different counsel, on entirely different facts, and completely unrelated to this case or any other litigation, to punish Contour 5151 here.

### E.    LV's requested sanctions are extreme and inappropriate.

LV fails to show why *any* sanction is appropriate, and they *certainly* fail to show that Contour 5151's conduct merits the extreme sanctions of either striking the Answer or, alternatively, entering overly broad adverse inference jury instructions relating to the topics of the Motion contrary to existing evidence. As an initial matter, striking an answer is a severe sanction that should be imposed as a last resort, and requires a finding that Contour 5151's actions were intentional or in bad faith. *Chudasama v. Mazda Motor Corp*., 123 F.3d 1353, 1371 (11th Cir. 1997). Even if the Court is inclined to find that there was some type of willful noncompliance or bad faith, LV must show that there is no lesser sanction that would suffice. *See Wouters*, 9 F.3d at 934.

Furthermore, an adverse inference is **also** a severe discovery sanction, despite the fact that LV presents this request to the Court as a lesser sanction. *See Skanska*, 75 F.4th at 1311 (noting that adverse jury instructions and dismissal or default judgment are all listed as potential remedies to spoliation only under Fed. R. Civ. P. 37(e)(2)). Broadly speaking, LV asks for sanctions under Rule 37(e)(1), (e)(2), (b)(2), (c)(1), and/or this Court's inherent authority to impose sanctions. While an adverse inference/jury instruction is authorized under (e)(2), (b)(2), and (c)(1), it is not authorized under (e)(1). Meaning that, to the extent this Court finds that any

sanction is merited under *only* (e)(1), the Court is not authorized to grant LV's request for an adverse inference/jury instruction. *Id*.

## CONCLUSION

LV has realized that the evidence does not support its case. Rather than deal with that reality, LV audaciously asks this Court, based largely on Judge Pannell's order in another case involving a separate entity, counsel, facts, causes of action, etc., to strike Contour 5151's Answer and avoid a jury ever seeing the evidence at all, or instruct the jury to use LV's substituted reality. LV is not seeking proper sanctions; it is asking the Court to let it win. LV's Motion should be denied in its entirety, including LV's request for fees. If anything, the Court should award fees to Contour 5151 for having to respond to LV's improper, unfounded, and overreaching Motion.

Respectfully submitted, this 20th day of August, 2025.

**STITES & HARBISON, PLLC**
*/s/ Julie C. Cahill*
Thomas J. Mihill
Georgia Bar No. 001363
Julie C. Cahill
Georgia Bar No. 380547
*Counsel for Defendant,*
*Contour 5151 ONH, LLC*

303 Peachtree Street, N.E.
Suite 2800
Atlanta, Georgia 30308
Office:404-739-8800
tjmihill@stites.com
jcahill@stites.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point Times New Roman type font.

This 20th day of August, 2025.

**STITES & HARBISON, PLLC**

*/s/ Julie C. Cahill*
Julie C. Cahill
Georgia Bar No. 380547

303 Peachtree St. NE
Suite 2800
Atlanta, GA 30308
404-739-8800 - Office
jcahill@stites.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS** on all counsel of record by electronic email via CM/ECF.

This 20th day of August, 2025.

**STITES & HARBISON, PLLC**

*/s/ Julie C. Cahill*
Julie C. Cahill
Georgia Bar No. 380547
*Counsel for Defendant,*
*Contour 5151 ONH, LLC*

303 Peachtree Street, N.E.
Suite 2800
Atlanta, Georgia 30308
Office: 404-739-8800
jcahill@stites.com