# Exhibit 1

## REDACTED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER S.A.S.,<br><br>               Plaintiff,<br><br>   vs.<br><br>CONTOUR 5151 ONH, LLC, a Georgia limited liability company d/b/a OLD NATIONAL DISCOUNT MALL; PRETAS DEDVUKAJ; ABC CORPS. 1-10; and JOHN DOES 1-10, individually,<br><br>               Defendants. | Civil Action No.<br><br>1:23-cv-02818-VMC<br><br>████████████ |

## SUPPLEMENTAL BRIEF IN SUPPORT OF LOUIS VUITTON'S MOTION FOR SANCTIONS
## AGAINST DEFENDANT CONTOUR 5151 ONH, LLC

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

**I.    INTRODUCTION AND FACTUAL BACKGROUND** .................................1

**II.    ARGUMENT**.........................................................................4

   **A.  Marshal Rhodes's Documents Prove That Contour Engaged in Widespread Spoliation in Bad Faith**................................................4

      1.    Numerous Relevant Texts Found in Marshal Rhodes's Phone Should Have Been Produced by Multiple Contour Custodians, But Were Not .......................4

      2.    Contour is Responsible for Documents Deleted by Rhodes.........................7

   **B.  Marshal Rhodes's Documents Demonstrate that Louis Vuitton's Requested Sanctions Are Warranted** ................................................9

      1.    Marshal Rhodes's Documents Provide Further Support that Contour Spoliated Rhodes's Termination Notice ..........................................9

      2.    Marshal Rhodes's Texts Provide Further Support That Contour Spoliated Louis Vuitton's Notice Letters to Contour ......................................13

      3.    Rhodes's Texts Further Support That Contour Withheld Identities of Market Employees and Provided False Interrogatory Responses and Deposition Testimony. ..........................................................14

**III.    CONCLUSION** ...........................................................15

## I.    INTRODUCTION AND FACTUAL BACKGROUND

In late October 2025, former Contour 5151 ONH, LLC ("Contour") employee and longtime manager of the Old National Discount Mall ("Market") Marshal Rhodes produced tens of thousands of text messages and emails that reveal that Contour's spoliation conduct was just as pervasive as Louis Vuitton Malletier S.A.S. ("Louis Vuitton") initially believed. Numerous relevant documents produced by Rhodes that should have been produced by Contour, as well as Rhodes's own spoliation conduct facilitated by Contour's failure to instruct Rhodes to preserve evidence, reveal Contour's bad-faith intent to spoliate. Moreover, Rhodes's documents (that she did not already delete) further demonstrate that the sanctions Louis Vuitton requested in its Motion for Sanctions (Doc. 122) are warranted. Louis Vuitton has been unduly prejudiced by Contour's spoliation of documents, false interrogatory responses, and failure to disclose relevant individuals throughout this case, which can only be remedied by Louis Vuitton's requested sanctions.

Louis Vuitton sought document discovery from Rhodes since her first subpoena in May 2024. Doc. 43. After numerous attempts by Contour and their attorneys (also Rhodes's attorneys) to block this discovery, the Court ordered Rhodes to produce documents responsive to her subpoena on July 1, 2025. Doc. 127. Rhodes, her former attorneys, and her current attorneys repeatedly (and falsely)

represented that no relevant documents exist, even when facing a contempt motion.

*See* Doc. 146.  Specifically, they made the following representations:

- "Ms. Rhodes has searched for documents, and none have been found." Ex. DDD at 5 (July 31 email from Gregory Taube of Nelson Mullins);
- "Ms. Rhodes has also confirmed to us that she has searched and that she does not currently have any text messages with anyone from Contour, the Market, or anyone else related to the subject of this litigation or relevant to your document requests in her possession." *Id.* at 1 (August 14 email from Thomas Mihill of Stites and Harbison);
- "Everything that has been relevant was sent to Contour; everything from Contour has been sent to Louis Vuitton. (Doc. 148 (September 8 Contempt Hearing Tr.) at 20:16–18);
- "[W]e don't believe there is likely to be anything at all that is relevant to this matter in what we are producing" (*id.* at 24:20–22);
- "[T]here is nothing we expect to see that is going to have any merit on this case…" (*id.* at 24:24–25);
- "We don't expect to get anything relevant" (*id.* at 26:7); and
- "[The texts and emails] having nothing to do with the Old National Discount Mall." (*id.* at 30:7–8).

To the contrary, in late October 2025, Rhodes produced over 3,500 pages of email documents and over 10,850 pages of documents containing tens of thousands of text messages all related to her work for Contour and the Market. The content of those messages is shocking.

Rhodes's texts reveal that Contour's spoliation of documents impacts every aspect of this case. For example, numerous text messages and chains related to counterfeiting and the law enforcement raid on the Market and should have been produced by multiple Contour custodians during discovery but were not, revealing Contour's bad-faith intent to spoliate. These texts also reveal that Contour was aware

of widespread counterfeiting at the Market but did nothing to address it. Indeed, the texts and emails produced by Rhodes provide further support for the sanctions Louis Vuitton requested on key issues, including (1) the circumstances of Rhodes's termination and her involvement in permitting counterfeiting and taking bribes; (2) Contour's knowledge of Louis Vuitton's cease and desist letters sent to Contour; and (3) failure to disclose identities of Market employees.

In addition, contrary to her counsel's representations, the texts show that Rhodes did in fact "selectively delete things" (*id.* at 22:13), even up to the day before her phone was imaged. Incredibly, Contour's former attorney was communicating with Rhodes even before she was subpoenaed and dozens of times just before she began deleting in July/August 2024, and again in July 2025. There is no telling what else was deleted and cannot be recovered, but one thing is certain: Contour had a duty to instruct Rhodes to preserve documents at minimum since the complaint was filed in June 2023 while Rhodes was still an employee, certainly when their attorneys were communicating with her as early as March 2024, and undoubtedly since their attorneys have represented her in connection with her subpoena, Court Order to compel, and Motion for Contempt. Yet, they did not. Doc. 122-2 (Ex. T); Doc. 142-4 (Ex. XX) at 40:19–42:25, 51:1–15.

This is the same sanctionable conduct that the same individuals (Defendant Pretas Dedvukaj, Latasha Dia, Marshal Rhodes, and others) engaged in in *Contour*

*Eastwyck*,[1] and it is the same conduct that has "so soiled and spoiled" the facts of this case to the detriment of Louis Vuitton. Contour should not be permitted to continue to engage in this type of discovery misconduct, and it should not be permitted to tell whatever fabricated story it intends to tell to the Court or a jury in the absence of the evidence it spoliated. Louis Vuitton respectfully requests that the Court grant its Motion for Sanctions in its entirety and impose sanctions to the fullest extent permitted under the law as requested.

## II.    ARGUMENT

### A.    Marshal Rhodes's Documents Prove That Contour Engaged in Widespread Spoliation in Bad Faith

1.    Numerous Relevant Texts Found in Marshal Rhodes's Phone Should Have Been Produced by Multiple Contour Custodians, But Were Not

During discovery, Louis Vuitton and Contour agreed on a text message search protocol that consisted of: (1) collection of texts from the phones of certain custodians, including Defendant Dedvukaj, Latasha Dia, and Carla Henderson; (2) review and production of full text chains with certain participants if those chains contained less than 500 texts; and (3) application of search terms to chains containing more than 500 texts. Ex. EEE (Sep. 6, 2024 email to Court) at 2. Marshal Rhodes's

---

[1] *Collin-Williams v. Contour Eastwyck*, No. 1:20-CV-3129-CAP, 2022 WL 17828934 (N.D. Ga. Dec. 15, 2022); *see also* Doc. 122-1 at 2–3.

text message production shows that Contour failed to produce texts pursuant to this search protocol and spoliated the evidence in bad faith.

For example, a text chain between Rhodes and Carla Henderson on the *day of the criminal counterfeiting raid* was not produced from Carla Henderson's custodial texts despite hitting on the search terms "warrant," "sheriff," "Fulton," "booth," and "vendor." Ex. FFF at 2; *see* Ex. EEE at 1–3. This chain contains dozens of pictures from the raid and discusses how the booths of certain serial counterfeiters were searched and seized, including "Bouba" (aka Boubacar Diallo) who Contour documented in notes had paid Rhodes bribes. Ex. FFF at 2, 6–28; *see also* Doc. 123-3 (Ex. X) (listing "Bouba"); Doc. 122-25 (Ex. W) at 270:4–273:23.

As another example, and also as part of the search protocol, Contour agreed to review and produce all texts on a chain with Defendant Pretas Dedvukaj, Latasha Dia, and Marshal Rhodes because this chain contained less than 500 texts. *See* Ex. GGG at 2. As such, all relevant texts should have been produced from Ms. Dia's and Defendant Dedvukaj's phone as they were both custodians. Ex. EEE at 1. They were not. Rhodes's production revealed that a text chain between Latasha Dia, Defendant Dedvukaj, and Rhodes in the days following the raid was not produced—a text chain indicating that Contour callously focused on continuing to demand rent payments from vendors engaged in counterfeiting rather than stopping their counterfeiting conduct that resulted in the Market being shut down due to a massive criminal

counterfeiting raid less than a month earlier. Ex. HHH. The other texts from this chain also contain reports to Defendant Dedvukaj regarding law enforcement's ongoing investigation of the Market just days after the raid. Ex III at 2, 4–6.

There are many other examples, including the following:

- A text chain between Rhodes and Carla Henderson dated only weeks after the raid was not produced from Henderson's custodial texts, despite hitting on search terms "officer," "Brannon," "violation," and "vendor." Ex. JJJ at 2; *see* Ex. EEE at 2–3. This chain discusses interactions with Sergeant Brannon of Fulton County, as well as a "meeting" between some of the counterfeiting vendors and Contour employees following the raid. Ex. JJJ.

- A text chain between Defendant Dedvukaj, Carla Henderson, and Rhodes days after the raid was not produced from Defendant Dedvukaj's or Carla Henderson's custodial text files despite hitting on the search terms "sheriff," "major," "seize," and "the mall." Ex. KKK at 2; *see* Ex. EEE at 2–3. This chain notifies Defendant Dedvukaj of law enforcement's ongoing investigation of the Market and attaches pictures. Ex. KKK at 2–7.

- A text chain between Rhodes and Carla Henderson in January 2023 following the raid was not produced from Henderson's custodial texts, which hit on the search terms "major" and "attorney." Ex. LLL at 2; *see* Ex. EEE at 2. This email indicates that Rhodes and Contour's attorney discussed whether Contour would attend a meeting requested by Major Hinton of Fulton County following the raid. Ex. LLL.

These are just a few examples of many and do not include the countless other documents that Contour deleted or failed to produce without Rhodes as a participant, much less the documents that Rhodes herself deleted. There is no telling just how much Contour spoliated, but one thing is certain: Contour engaged in widespread, systemic spoliation of highly relevant evidence across multiple custodians and

6

company files. There is no excuse, and it is indicative of their intent to hide pertinent discovery throughout this case, including as it relates to the specific issues addressed in Louis Vuitton's Motion for Sanctions.

### 2.    Contour is Responsible for Documents Deleted by Rhodes

Marshal Rhodes's text productions now show that Contour's former attorney, Gregory Taube of Nelson Mullins, was involved far earlier in this case and far more intimately than previously known. Indeed, Mr. Taube represented Contour and communicated with key individuals in this case (by phone and text) at least as early as May 2022, prior to the October 2022 raid. Ex. MMM; Ex. NNN. He also was involved in making key decisions regarding communications with law enforcement following the raid. Ex. LLL. Despite being represented by counsel, Contour and its employees were not instructed to preserve evidence until, by their own admission, December 2023 (allegedly), if at all. Doc. 122-2 (Ex. T); Doc. 122-1 at 5–6.

Moreover, Rhodes's call/text logs obtained from T-Mobile and her cellphone production shows that Contour's attorney Gregory Taube was communicating with Rhodes over the phone in April 2024 *over a month before she was noticed for subpoena*. Ex. OOO. And once she was subpoenaed on May 31, 2024, Mr. Taube spoke to Rhodes on over a dozen occasions in June, July, and August 2024. *Id*. Incredibly, Contour's attorney never instructed Rhodes—its key former employee— to preserve evidence. Doc. 142-4 (Ex. XX) at 40:19–42:25, 51:1–15. As Rhodes

7

testified, her deletion of texts and emails from her time at Contour began shortly after these conversations. Ex. LLLL (Rhodes Tr.) at 74:11–20 ("about a year" before her August 25, 2025 deposition). Rhodes testified that she deleted emails from her work at Contour and texts with Contour employees and Market vendors, including serial counterfeiters and accused bribe-payors. Doc. 142-4 (Ex. XX) at Tr. at 63:11–18; 68:16–25; *see* also Ex. LLLL at 74:1–9; 82:21–83:14; 84:9–11; 206:6–17; 230:5–232:25 (Yaya, Bouba, and Griff); Doc. 123-3 (Ex. X) (identifying Yaya, Bouba, and Griff as bribe-payors); Doc. 122-25 (Ex. W) at 270:4–273:23.

Even after the Court ordered Rhodes to produce documents on July 1, 2025, Rhodes's recent production shows that she continued tampering with and destroying evidence on at least July 10, 2025 and on September 7, 2025—*just one day* before her current attorneys (also Contour's attorneys) represented to this Court that Rhodes's phone was being imaged (Doc. 148 (Sep. 8 Contempt Hr'g. Tr.) at 31:12–13). *See, e.g.*, Ex. PPP (July 10, 2025 artifact of activity by Rhodes on unproduced text chain with Antonio Carr (aka Rock), former Contour employee accused of taking bribes)[2]; *see also* Ex. QQQ (September 7, 2025 artifact of activity of Rhodes removing herself from text chain with Defendant Dedvukaj and Latasha Dia).

---

[2] *See* (Ex. LLLL at 109:22–110:1) (identifying Antonio Carr as Rock); *see also* Doc. 123-3 (Ex. X) (identifying Rock as Contour employee involved in accepting bribes). T-Mobile logs show that Rhodes communicated with Antonio Carr including by text ("SMSC") on dozens of occasions after being fired in July 2023 during the pendency of this case and after Rhodes was subpoenaed, including over 43 communications in

None of this conduct should have occurred under the watch of Contour's (and her) attorneys, and certainly not after the Court's July 1 Order. Yet it did, and conveniently, it happened before Rhodes's phone was ever imaged on September 8 and without Contour's (or her) attorneys ever instructing her to preserve evidence.

**B.      Marshal Rhodes's Documents Demonstrate that Louis Vuitton's Requested Sanctions Are Warranted**

1.      Marshal Rhodes's Documents Provide Further Support that Contour Spoliated Rhodes's Termination Notice

Louis Vuitton's Motion seeks sanctions for Contour's spoliation of Rhodes's termination document that was created when she was fired just weeks after the complaint in this case was filed. (Doc. 122-1 at 8–17; Doc. 142 at 10–13). That termination document likely revealed that Rhodes was fired for her role as Contour's manager in permitting counterfeiting activity, and even actively participating in it—which Contour conveniently denies in that absence of that spoliated evidence.

It is now clear why Contour and its counsel fought so hard to block discovery of Rhodes for so long. Not only was her testimony damning to Contour, but her

---

2025. *See* Ex. MMMM. Yet none of these texts were produced despite that all text with Carr should have been produced under the protocol. *See* Ex. NNNN at 1–2. The artifact of activity on this chain indicates that Rhodes deleted texts on July 10, 2025 at 10:57 AM or later. Ex. PPP. Curiously, Rhodes spoke with Carr on the phone on three occasions hours after the artifact of activity on July 10, 2025. Ex. MMMM at 32. This activity all occurred just a few days after Rhodes spoke to her former counsel following the July 1 Order. Ex. OOO (calls with Gregory Taube on July 1 and 7); Ex. NNN (identifying G. Taube phone number).

document production (of what she did not already delete) reveals that the Market was overflowing with counterfeits, that Contour knew it, and that it did nothing.

For example, a text chain with Rhodes contained a video documenting a vendor named Suliman in Booth L11 openly completing a sale of Louis Vuitton handbags in the Market and even offering to sell at a wholesale level additional counterfeit Louis Vuitton products. Ex. RRR; Ex. SSS[3] at 0:15–0:24 ("I'm going to give you my card…so I will literally just deliver them to you somewhere"). This is the same tenant that owned multiple booths in the Market, including Booth B9/B10, and who Defendant Dedvukaj acknowledged during depositions was not terminated despite Contour's prior discovery of the tenant's counterfeiting conduct. Doc. 122-2 (Ex. A) at 299:1–5 (Q. "So having seen these documents, does Contour believe that Marsha [sic] Rhodes terminated Booth B-9 when she found [counterfeit] Louis Vuitton there in February 2022? A. "I believe she did not."); *see also* Ex. TTT.  Other texts also clearly demonstrate Contour's knowledge of its tenants' rampant counterfeiting conduct. Ex. UUU (Rhodes text with Latasha Dia showing booth openly displaying dozens of counterfeit handbags); Ex. VVV (Rhodes text showing booth openly displaying hundreds of counterfeit products); Ex. WWW (Rhodes text showing Market vendors selling counterfeit products in the Market's parking lot).

---

[3] Ex. SSS is a video that is being mailed to chambers in a flash drive.

10

In addition, and contrary to Contour's and Rhodes's counsel's representations that "[t]here is no evidence, whatsoever, of any bribes" (Doc. 148 (Sep. 8 Contempt Hr'g. Tr.) at 19:9–10), Rhodes's documents reveal that she and other Contour employees did indeed take bribes, consistent with the testimony of Contour's employees. For example, text messages show a video of former Contour employee Bryan Graham (aka "Bama") opening the Market and unloading a tractor trailer of merchandise for a vendor at night after hours. Ex. XXX; Ex. YYY[4]. A subsequent text explains that Bama did this ████████████████████████ ██████████████████████ on at least this one occasion. Ex. ZZZ. "Bama" is the same Contour employee that the current manager testified returned to the Market to "apologize[] for all of the wrongdoing that he and Marshal did at the mall" in accepting bribes from counterfeiters. Doc. 122-21 (Ex. S, M. Foucha Tr.) at 209:15–211:10; Ex. 142-4 (Ex. XX, Rhodes Tr.) at 108:13–15 (identifying "Bama" as Bryan Graham).[5]  Again, this is just from what Rhodes *did not* already delete.

---

[4] Ex. YYY is also a video that is being mailed to the Court on a thumb drive.

[5] Rhodes's texts also reveal numerous CashApp transactions for large sums each time between Rhodes and the same security guards who are also accused of accepting bribes. Exs. AAAA, BBBB, CCCC; *see also* Doc. 123-3 (Ex. X (naming Asani and Antonio Carr (aka Rock)).  Other texts reveal that Rhodes and Contour employees ██████████████████████████████████████████ ████████████████████████████████████████████████ Ex. DDDD; *see also* Doc. 123-3 (Ex. X) (identifying YaYa).

11

Furthermore, around the same time soon-to-be Market manager Marcus (aka Marquis) Foucha discussed Rhodes's bribery scheme with Defendant Dedvukaj around April 2023 after the raid (Ex. LLLL at 235:12–242:5), Rhodes texted Contour employee Carla Henderson that she spoke to Defendant Dedvukaj and ████ ████████████████████████████ and that ████████████████████ Ex. EEEE.[6]  It also appears that Defendant Dedvukaj's testimony that he, or anyone at Contour, never spoke to Rhodes about the bribery allegations was inconsistent with the evidence we now have from Rhodes. Doc. 122-2 (Ex. A) at 322:14–19.

Finally, days after being fired, Rhodes emailed Latasha Dia with a direct request for her to send her a copy of her termination notice that was shown to her when she was fired. Ex. FFFF.  Dia never responded (allegedly), so the notice cannot be recovered from Rhodes. Despite Contour's attorneys' incredible suggestion that the termination notice may never have existed at all (Doc. 136 at 2), clearly Rhodes believed the termination notice existed, and Dia previously testified that it did. *See* 122-1 at 9–10. In reality, Contour deliberately chose not to preserve the notice despite having a duty to do so since at least when the complaint was filed weeks before Rhodes was fired. The termination notice would have explained the basis for Rhodes's termination, which all other evidence suggests that she knew about

---

[6] In addition, this text should have been produced out of Carla Henderson's custodial texts for hitting on the search term "Pete" and "Marquis." (Ex. EEE at 3 (names of custodians were search terms)).

Contour employees' and officers' role in permitting counterfeiting at the Market and was involved herself. But now it is gone. Contour should not be permitted to capitalize on the termination notice's mysterious absence after the fact to tell whatever story it desires. Sanctions are warranted as requested. *See* Doc. 121-1.

2.      <u>Marshal Rhodes's Texts Provide Further Support That Contour Spoliated Louis Vuitton's Notice Letters to Contour</u>

Louis Vuitton's motion seeks sanctions for Contour's spoliation of Louis Vuitton's letters and communications related thereto, indicating Contour's knowledge of counterfeiting. Doc. 122-1 at 19–22; Doc. 142 at 5–9. Among the documents that Rhodes did not delete was a text chain between a Contour employee and a security guard named Asanie discussing the January 2022 letter sent by Louis Vuitton and attaching pictures of each page of the letter. Ex. GGGG. As discussed In Louis Vuitton's opening and reply briefs, cellphone pictures of the January 2022 letter from Louis Vuitton were produced along with a production of text messages from the files of Contour employee Carla Henderson. *See* Doc. 122-1 at 19–21; Doc. 142 at 8–9; *see also* Doc. 123-8 (Ex. JJ). However, Contour failed to produce the corresponding text messages and altered the metadata. Contour and Ms. Henderson also feigned ignorance of the pictures' origin during depositions. *Id.*

Importantly, the cellphone pictures from the files of Carla Henderson are not the same as the pictures of the letter from Marshal Rhodes's text messages,

13

indicating that Carla Henderson's pictures are from some other text conversation. *Compare* Doc. 123-8 (Ex. JJ) *with* Ex. GGGG. Thanks to Contour's spoliation, Louis Vuitton will never know to whom pictures of the letter were sent, which very well could have been other Contour employees including Latasha Dia, Defendant Dedvukaj, and Contour's lawyers.  These are reasonable inferences given that this is exactly what Rhodes testified happened with another Louis Vuitton cease and desist letter. Doc. 142-4 (Ex. XX) at 32:7–36:6, 292:10–296:10, 314:9–25.

3.    Rhodes's Texts Further Support That Contour Withheld Identities of Market Employees and Provided False Interrogatory Responses and Deposition Testimony.

In addition to Contour's false "verified" interrogatory responses and deposition testimony regarding individuals who worked at the Market and when (Doc. 122-1 at 22–24; Doc. 142 at 13–15), Rhodes's text message production reveals countless other Contour employees that were never disclosed to Louis Vuitton, depriving it of the opportunity to conduct discovery from these individuals.

For example, thousands of Rhodes's texts from a chain named "Contour Team" contained discussions regarding daily operations at the Market, including the sale of goods out of a suitcase. *See, e.g.*, Ex. HHHH. Individuals such as Christian Johnson, Daniel Joyl, Markesha, Gibbs, Tevin, Tyron Price, and others were never disclosed. Not a single text from this "Contour Team" chain was produced out of Carla Henderson's texts (who was a participant) despite, in just this one instance,

14

hitting on the search term "vendor." *Id.* at 2; *see* Ex. EEE at 3. Moreover, despite this "Contour Team" text chain being active on nearly a daily basis since June 2021, the produced messages abruptly end on October 5 just days before the raid. Ex. IIII.

More glaringly, Contour failed to disclose that yet another Dedvukaj family member (Vasel Dedvukaj) was deeply involved in on-the-ground operations in Atlanta for Contour properties including the Market. Vasel is included or discussed on over 75 text chains produced by Rhodes, spanning hundreds of messages, yet his name appears nowhere in Contour's productions or discovery responses. *See* Ex. JJJJ (Vasel providing Rhodes keys to the Market just weeks before the raid); Ex. KKKK (Vasel on text chain with Rhodes and "Bama" regarding issues with tenants at the Market). Louis Vuitton was deprived of discovery from Vasel throughout this case, and Contour's failure to disclose him was yet another attempt by Contour to mask the Dedvukaj family's involvement in the conduct leading to this case.

Louis Vuitton was deprived of document and testimonial evidence from all of these undisclosed individuals throughout this case, which likely would have yielded additional information regarding Contour's knowledge and inaction regarding counterfeiting. Sanctions are warranted as requested in the Motion (Doc. 121-1).

## III.   CONCLUSION

Louis Vuitton respectfully requests that its Motion for Sanctions be granted in its entirety as requested. *See* Doc. 121-1.

Dated: January 8, 2026        Respectfully submitted,

/s/ *Michael J. Allan*
Michael J. Allan, Esq. (*pro hac vice*)
Joseph. F Ecker, Esq. (*pro hac vice*)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, D.C.  20036
mallan@steptoe.com
jecker@steptoe.com
(202) 429-3000

/s/ *John H. Zacharia*
John H. Zacharia, Esq. (*pro hac vice*)
ZACHARIA LAW PLLC
1701 Pennsylvania Avenue, NW, Suite 200
Washington, D.C.  20006
john@zacharialaw.com
(202) 845-5091

*/s/ Jay L. Strongwater*
Jay L. Strongwater, Esq.
STRONGWATER & ASSOCIATES
3340 Peachtree Road
Suite 2570
Atlanta, Georgia  30326
jls@strongh2o.com
Ga. Bar No. 688750

*Attorneys for Plaintiff Louis Vuitton Malletier S.A.S.*

16

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D

Pursuant to Local Rule 7.1D of the United States District Court for the Northern District of Georgia, the undersigned hereby that the foregoing filing is a computer-generated document, prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1C of the United District Court for the Northern District of Georgia.

*/s/ Michael J. Allan*
Michael J. Allan, Esq.

*Attorney for Plaintiff Louis Vuitton Malletier S.A.S.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2026, the foregoing was served by electronic mail on all counsel of record.

/s/ *Michael J. Allan*
Michael J. Allan

*Attorney for Plaintiff Louis Vuitton Malletier S.A.S.*

17