**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA - ATLANTA DIVISION**

| | |
|---|---|
| LOUIS VUITTON MALLETIER S.A.S., <br><br> Plaintiff, <br><br> vs. <br><br> CONTOUR 5151 ONH, LLC, a Georgia limited liability company d/b/a OLD NATIONAL DISCOUNT MALL; PRETAS DEDVUKAJ; ABC CORPS. 1-10; and JOHN DOES 1-10, individually, <br><br> Defendants. | Civil Action No. <br><br> 1:23-cv-02818-VMC |

**PLAINTIFF'S SUPPLEMENTAL STATUS REPORT**
**CONCERNING SANCTIONS HEARING**

Plaintiff Louis Vuitton Malletier S.A.S. ("Louis Vuitton") respectfully submits this Supplemental Status Report in response to Defendant Contour 5151 ONH, LLC's ("Contour") Status Report filed on April 28, 2026 (Doc. 182) and pursuant to the Court's April 29 Order. This submission supplements Louis Vuitton's April 28, 2026 Status Report (Doc. 183) and further sets forth Louis Vuitton's position in light of Contour's last-minute disclosure of information, correct the record where necessary, and explain why Contour's proposed course of action remains inadequate and prejudicial.

**INTRODUCTION**

This matter is before the Court for one reason: spoliation and sanctionable conduct by Contour and its officers and employees. Contour produced an

1

incomplete and unreliable discovery record despite repeated assurances from its counsel, both Nelson Mullins and Stites & Harbison, that it had complied with its discovery obligations. As a result of this spoliation, Louis Vuitton filed its Motion for Sanctions on June 20, 2025—nearly a year ago. Doc. 122. As the Court is aware, Contour's last-minute attempt to blame "human or technical error" led to rescheduling the evidentiary hearing related to Louis Vuitton's Motion. Doc. 181. And once again, the Parties were unable to submit a joint status report earlier this week because of another last-minute maneuver by Contour—this time, Contour's disclosure (for the first time) after business hours on April 28, 2026, of an extensive memorandum prepared by its former counsel, Nelson Mullins, along with conflicting and newly raised arguments and proposals from Contour's current counsel.

Despite multiple emails, meet-and-confer discussions, and repeated requests by Louis Vuitton, Contour withheld the substance of its purported investigation into the spoliated documents and information until that time. Louis Vuitton does not dispute that Contour's counsel previously referenced, in general terms, the possibility of reprocessing text messages. However, Contour did not disclose until the evening of April 28 (1) the scope, findings, or timeline of Nelson Mullins' internal investigation; (2) Nelson Mullins' admission that it never reviewed large categories of text messages at all; (3) its identification of multiple, systemic failures in the agreed text message protocol; (4) the prospect that former counsel would play

2

a role in remediation; (5) that an entirely new review process would be layered on top of unidentified deficiencies; and (6) that a Special Master might be necessary. Contour's decision to raise these issues for the first time at the eleventh hour made a meaningful joint submission impossible. Tellingly, Contour's email submission to this Court on April 30, 2026 does not suggest otherwise.

The memorandum drafted by Nelson Mullins and recently disclosed by Stites & Harbison reveals that Contour's prior assurances were false and that core categories of documents were never reviewed. Louis Vuitton should never have found itself in this position. For nearly two years, Contour and its counsel represented to Louis Vuitton and to the Court that they collected, reviewed, and produced relevant text messages in accordance with the agreed-upon protocol. Those representations drove deposition strategy, motion practice, and the orderly progression of this case. Even as recently as the declaration submitted by Nelson Mullins partner Gregory Taube in connection with the scheduled spoliation hearing, Contour's current and former counsel (falsely) maintained that they had handled discovery properly. Doc. 170-1. The Nelson Mullins memorandum now proves otherwise.

The memorandum establishes that Nelson Mullins failed to apply the agreed protocol to entire categories of text messages and to multiple key custodians. It further establishes that Nelson Mullins did not discover these failures until nearly

3

two years after it first collected the relevant text messages and only on the eve of the spoliation hearing, despite direct inquiries by Louis Vuitton during discovery disputes of suspected issues. As a result, Louis Vuitton confronts a record riddled with gaps that no one can now identify or quantify. These revelations raise serious questions about what documents exist, what documents were never reviewed, what documents were withheld, and what documents may have been lost.

This situation should never have occurred. It should not have taken nearly a year after Louis Vuitton filed its sanctions motion for these issues to come to light. It should not have required postponing a hearing on spoliation that resulted directly from discovery failures. And it should not have depended on a last-minute disclosure by former counsel that directly contradicts years of representations made to the Court.

Given these circumstances, Louis Vuitton seeks immediate and transparent discovery that does not depend on the representations or unilateral control of counsel who have proven unreliable. Louis Vuitton seeks access to all non-privileged material necessary to determine the full scope of the discovery failures, including discovery from Nelson Mullins and any other entities involved in collecting, processing, reviewing, or producing Contour's electronically stored information. Louis Vuitton further seeks a firm and enforceable timeline that brings this matter to resolution and puts an end to Contour's continued delays.

## I. Contour and Its Counsel Had At Least Two Years to Investigate Their Spoliation of Documents and Information

The underlying motion for sanctions and supplemental sanctions briefing detail a prolonged and unresolved pattern of missing documents and information in Contour's productions, including critical text messages from key custodians. To be clear, there are droves of spoliated documents and discovery abuses by Contour that have no bearing on the text message issue being investigated by Contour's counsel now. Louis Vuitton raised concerns about these deficiencies for years. Each time, Contour and its counsel dismissed those concerns and affirmatively represented that they had collected, reviewed, and produced all responsive material in accordance with the parties' negotiated protocol.

For example, in a September 23, 2024 discovery deficiency letter, Louis Vuitton raised "concern[s] about whether Contour is properly applying the agreed upon protocol" for text messages given contradictory statements Nelson Mullins made to the Court and Louis Vuitton regarding the collection, review, and production of Carla Henderson's text messages. *See* Ex. 1 at 5. Rather than investigating or attempting to remediate those issues, Nelson Mullins did not even address Louis Vuitton's concern in its responsive letter (Ex. 2) and brushed the issue aside in a subsequent meet and confer on October 2, 2024 attended by Contour's counsel of record Lucas Westby, Carolyn McGee, and Cara Brack of Nelson Mullins. Contour and Nelson Mullins never followed up on this issue, and no

additional custodial texts from Carla Henderson were produced following Louis Vuitton's September 23, 2024 letter.  Over 19 months later, Nelson Mullins' April 28, 2026 "memorandum" claims that "it appears the protocol was not comprehensively applied to any chats for Ms. Henderson and Mr. Foucha that had not been previously elevated to Relativity" due to a "[c]onfusion [a]bout [e]levation" of Henderosn's text messages. Doc. 182-1 at 3–4. Incredibly, this admission comes after Nelson Mullins partner Gregory Taube represented in a February 2026 declaration submitted with Contour's response to Contour's supplemental sanctions brief that "if a text message thread was not produced, it is because Nelson Mullins, as counsel for Contour, determined that it was non-responsive, privileged or subject to an objection, or not subject to the negotiated search protocol by search or otherwise." Doc. 170-1 at 3.  That representation was false—one of many by Nelson Mullins throughout this case.

These repeated assurances over the course of nearly two years formed the backdrop for Louis Vuitton's sanctions briefing and supplemental sanctions briefing, which set forth in detail the inconsistencies in Contour's productions and the resulting prejudice caused by missing documents and communications.

Louis Vuitton's June 2025 Motion for Sanctions should have triggered Contour and its counsel to review its discovery practices and reveal all the deficiencies we're only now learning.  Instead, Contour's counsel, first Nelson

Mullins and later Stites & Harbison, repeatedly assured both Louis Vuitton and the Court that discovery had been conducted properly. Contour's counsel consistently maintained that they had followed the agreed protocol and characterized any alleged gaps in production as speculation rather than fact.

The memorandum recently disclosed by Nelson Mullins fundamentally undermines those assurances and confirms that Contour's discovery failures were neither isolated nor minor. In an effort to minimize the misconduct, Contour characterizes the breakdown as a "simple error." Doc. 182 at 3. The Nelson Mullins memorandum attached to Contour's latest filing contradicts that assertion and instead documents serious, systemic breakdowns in Contour's discovery process. Doc. 182-1.

According to the memorandum, multiple miscommunications between Nelson Mullins and its e-discovery vendors prevented proper implementation of the agreed text message protocol. As a result, for several custodians, the review team never elevated entire categories of text messages involving so-called "unknown participants" for attorney review, despite the protocol's express requirement that such messages be reviewed. Doc. 182-1 at 3. The review process also failed to comprehensively examine chats involving at least four individuals whom the parties expressly agreed qualified as Chat Participants under the protocol. *Id.*

Nelson Mullins further concedes that it did not discover these failures until April 2026, nearly two years after Contour collected the text messages at issue and only days before the scheduled spoliation hearing. Neither Nelson Mullins nor Contour offer a credible explanation for why they did not discover this sooner. Even now, Nelson Mullins *still* does not and cannot state what responsive documents were never reviewed, what documents were never produced to Louis Vuitton, or whether those documents still exist. And Stites & Harbison was not involved in the process.

These admissions strike at the core of the September 6, 2024 negotiated text message protocol and directly undermine Contour's repeated representations to Louis Vuitton and to the Court that it had properly collected, reviewed, and produced responsive text messages in accordance with that agreement. The Nelson Mullins memorandum further confirms that, as of late April 2026, no one involved in Contour's discovery process can state with confidence which responsive communications Contour failed to review or withheld during fact discovery, or which communications may have been relied upon in depositions despite the absence of a complete and compliant review. Doc. 182-1.

## II. Contour's Proposed "Fix" Is Insufficient and Does Not Cure Prejudice; Full Transparency and Court Supervision Are Required

### A. Contour's Spoliation Is Not Easily Remediated

Contour's attempt to minimize its discovery failures as minor, technical, or easily remediable fails for at least four independent reasons. *First*, the record

8

forecloses Contour's characterization of its discovery failures as limited or inadvertent. The Nelson Mullins memorandum establishes that Contour's counsel never implemented the agreed text message protocol at all. This was not a narrow defect affecting a subset of custodians or messages; it was a wholesale failure that infected the discovery process from the outset and directly contradicts counsel's repeated representations that discovery was conducted properly.

*Second*, despite Contour's suggestion otherwise, this is not a case involving harmless oversight or a good-faith dispute over search methodology. The Court is confronted with admitted noncompliance with a negotiated text message protocol governing one of the most important categories of evidence in the case. The Court should not excuse such failures by allowing Contour to quietly redo discovery after the fact. Permitting that approach would reward misrepresentation, undermine the integrity of the discovery process, and invite further delay.

*Third*, Contour's reliance on privacy concerns and supposedly supportive cases addressing routine discovery disputes misses the mark. Those authorities presuppose a functioning discovery process and good-faith compliance with agreed procedures. For example, *Ranton v. Quest Diagnostics* discusses the improper withholding of text messages but it does not address the spoliation of text messages, making its reasoning inapplicable here. No. CV 22-2636 (RMB/MJS), 2024 WL 3092024 (D.N.J. June 21, 2024). Similarly, *Robinson v. Payne*, also does not deal

9

with issues of spoliation.  No. 6:23-CV-1313-PGB-LHP, 2025 WL 2687185 (M.D. Fla. Sept. 19, 2025)  Here, Contour's former counsel has conceded that the process failed at a foundational level.  Where that basic trust has been breached, the assumptions underlying Contour's cited authorities no longer apply.

*Fourth*, Contour cannot cure the resulting prejudice through belated promises of review.  Depositions have already proceeded without the benefit of a complete record.  Witness recollections have faded.  Devices may have been replaced.  Text messages may no longer exist.  These failures have already altered the trajectory of the litigation in ways that no retrospective effort can undo.

B.    **Contour Cannot Simply Blame Their Former Counsel for All of the Contour's Sanctionable Conduct**

Contour's attempt to redirect blame for its spoliation of evidence to Nelson Mullins paints an incomplete picture of responsibility for the sanctionable conduct at issue.  For example, Stites & Harbison failed to satisfy their own due diligence obligations.  As counsel of record, in late August 2025, they responded to Louis Vuitton's initial sanctions motion filed in June 2025—a filing that should have prompted an immediate and comprehensive investigation into the underlying discovery failures.  It did not.  Instead, it waited until April 2026 to identify Contour's discovery failures—after supplemental briefing closed in February 2026. In addition, Stites & Harbison and Nelson Mullins mishandled the representation of Marshal Rhodes by failing to conduct a reasonable investigation (much less any)

10

into the existence of documents responsive to her subpoena (of which there were many), and who deleted responsive material long after duties to preserve (including when represented by counsel). Counsel clearly had a duty to ensure collection and preservation of relevant information and failed to do so.[1] This says nothing of Nelson Mullins' outright failure to properly and timely instruct Contour to preserve evidence and the gross abuses in hindering and unilaterally cancelling Ms. Rhodes's deposition on multiple occasions, including highly dubious claims that Ms. Rhodes was across state lines in Florida the night before her in-person deposition in Atlanta. *See* Doc. 122-1 at 12–13.

Moreover, Contour's current argument that Nelson Mullins is responsible for discovery failures only extends to one of the four categories of sanctionable conduct that Louis Vuitton raised in its Motion for Sanctions. *See* ECF 122, 161. In other words, Contour still bears responsibility for the other three categories of sanctionable conduct, including some of the most important documents that were spoliated. *See* ECF 122, 161.

The breakdown in discovery therefore cannot be laid solely at Nelson Mullins's feet. Contour's former and current counsel have repeatedly failed to meet

---

[1]  *Collins-Williams v. Contour Eastwyck LLC*, No. 1:20-CV-3129-CAP, 2022 WL 17828934, at *94–95 (N.D. Ga. Dec. 15, 2022) ("my firm was not involved in the matter at the time" and "limit[ing] their involvement to relying on their client's testimony, sending document requests to the [client], [and] asking the [client] to produce documents" are not excuses to failing to conduct a reasonable investigation pursuant to Rule 26(d)).

11

their due diligence obligations under the Federal Rules, and Contour itself has also proven to be unreliable in following its own discovery obligations. Louis Vuitton cannot reasonably be expected to place renewed trust in their unilateral collection and review of discovery materials.

### C.    Full Transparency is Required to Begin to Remediate the Prejudice to Louis Vuitton

Despite this history, Contour proposes that its current counsel and its preferred vendor reprocess the same data and make unilateral determinations of responsiveness, with Louis Vuitton receiving only counsel-selected productions. That proposal is untenable given the above-referenced due diligence failures by Contour's current counsel. It suffers from at least three fundamental defects.

First, Contour's proposal asks Louis Vuitton and the Court to place renewed trust in defense-side processes after Contour has admitted to systemic failures in implementing the agreed discovery protocol. Second, it would require reliance on opaque, post hoc relevance determinations made nearly two years after the fact, without visibility into what was omitted, when omissions occurred, or why. Third, it does nothing to remedy the concrete prejudice already suffered—depositions taken, litigation strategies formed, and motion practice pursued on the basis of an incomplete and inaccurate discovery record. Reprocessing the same data behind closed doors does not cure that harm; it compounds it.

12

And it is worth noting that each of Contour's law firms have both either withdrawn from the case or tried to withdraw from the case. Placing this attempted discovery redo in either of their hands is not an option the Court should consider.

**D.     Contour Should Provide to Louis Vuitton Any and All Materials Collected that Were Not Withheld for Privilege, And Document Collection Review Related Discovery**

Contour has had countless chances spanning years and two different law firms to conduct discovery in accordance with the Federal Rules. It has failed. Louis Vuitton asks this Court for the following:

(a) Louis Vuitton be provided immediate access to all of the non-privileged materials that were either provided to or collected by counsel or a third party vendor. In other words, whatever Contour material that was collected and not otherwise logged on Contour's privilege log should be produced in full to Louis Vuitton with a sworn statement from its Counsel as to the source of the materials and specific details as to how the documents were collected and stored. The only possible objection Contour could have to this request is relevance. And if material is deemed irrelevant, it will not be admissible in this case;

(b) Louis Vuitton be provided materials in the possession of Contour, Nelson Mullins, and any other entities involved in the collection, processing, review, or production of Contour's electronically stored information. This includes communications concerning the handling of text messages, discovery protocols,

vendor instructions, and any post-collection assessments of what was—or was not—produced. Under these circumstances, inspection consistent with Rule 34 is the only mechanism that allows Louis Vuitton to independently verify what discovery remains available and to identify what has been deleted, withheld, or never preserved.

The Court has ample authority to order this relief. Courts possess broad discretion to regulate discovery. *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Rule 34 of the Federal Rules of Civil Procedure requires that requested documents be produced for the requesting party to copy or inspect. Fed. R. Civ. P. 34(a)(1). The rule imposes no obligation on the producing party to copy the documents itself. *See Border Collie Rescue, Inc. v. Ryan*, No. 04 568 J 32HTS, 2005 WL 307660, at *1 (M.D. Fla. Jan. 13, 2005) (citing 8A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2213 (2d ed. 1994)). The responding party need only make the documents available for inspection. Although producing parties ordinarily control the manner of production, that presumption does not apply where, as here, the discovery process has proven unreliable. Given the repeated failures here, inspection is both an appropriate and necessary remedial measure under Rules 26 and 34. *See Discrete Wireless, Inc. v. Coleman Techs., Inc.*, 2008 WL 6898503, at *2 (N.D. Ga. June 26, 2008).

(c) Louis Vuitton be provided depositions from Contour, Nelson Mullins, and any other entities involved in the collection, processing, review, or production of Contour's electronically stored information, and an supposed investigations currently underway.

In addition, Louis Vuitton further seeks a clear, enforceable, and Court-supervised timeline to bring this matter to resolution without further delay. Continued unilateral decision-making by counsel whose assurances have repeatedly proven unreliable is neither efficient nor equitable.  At this stage, transparency and judicial oversight are the only means of restoring fairness to the discovery process. Louis Vuitton wants these items produced by Contour within a week, with the goal of completing the review and any necessary follow-up discovery in short order so that the evidentiary hearing can be re-scheduled to occur in the next 60-90 days.

Accordingly, Louis Vuitton respectfully seeks an order permitting full inspection of Contour's non-privileged discovery materials—including text messages, emails, electronically stored information, scanned hard-copy files, and discovery related communications from Contour's counsel and third-party discovery vendors—so that the integrity of the discovery record can be restored and the parties, at last, can determine what evidence exists and what has been irretrievably lost.

## CONCLUSION

Contour's April 28, 2026 Status Report confirms that significant discovery failures occurred, but it minimizes their seriousness and proposes a solution that neither cures prejudice nor ensures transparency.   Louis Vuitton respectfully requests that the Court order the immediate inspection of Contour's non-privileged discovery materials and set this matter on a path to prompt resolution of the pending sanctions motion.

Dated: May 1, 2026                  Respectfully submitted,

/s/ Michael J. Allan
Michael J. Allan (*pro hac vice*)
Joseph F. Ecker (*pro hac vice*)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
mallan@steptoe.com
jecker@steptoe.com
(202) 429-3000

/s/ John H. Zacharia
John H. Zacharia (*pro hac vice*)
ZACHARIA LAW PLLC
1701 Pennsylvania, Avenue, NW
Suite 200
Washington, DC 20006
john@zacharialaw.com
(202) 845-5091

16

/s/ Jay L. Strongwater
Jay L. Strongwater
Georgia Bar No. 688750
STRONGWATER & ASSOCIATES
1360 Peachtree Street
Atlanta, GA 30309
jls@strongh2o.com
(404) 872-1700

*Attorneys for Plaintiff*
*Louis Vuitton Malletier S.A.S.*

## <u>CERTIFICATE OF COMPLIANCE AS TO FONT SIZE</u>

Pursuant to the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, this is to certify that the foregoing Motion complies with the font and point selections approved by the Court in Local Rule 5.1C.  The foregoing was prepared on a computer using Times New Roman font (14 point).

*/s/ Michael J. Allan*
Michael J. Allan

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2026, a true and correct copy of the foregoing motion was served via the Court's electronic filing system on all counsel of record.

/s/ *Michael J. Allan*
Michael J. Allan