# Exhibit 1

September 23, 2024

Lucas Westby
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station, Suite 1700
201 17th Street NW
Atlanta, GA 30363
lucas.westby@nelsonmullins.com

Dear Counsel:

We write concerning numerous discovery deficiencies that remain unaddressed by Contour. Contour has provided very little information and very few documents in this case thus far. Once again, the discovery deadline is quickly approaching. Please supplement or provide a response accordingly, or otherwise provide your availability for a meet and confer by September 25.

**Outstanding issues from Discovery Conference**

***Contour financials*****:** The Court ordered the Parties to meet and confer regarding Contour's profit and loss statements (Dkt. 63 at 3). On a meet and confer nearly a month ago, you stated that you were speaking with your client and would get back to us. We have heard nothing. It is well settled in this Court and in the Eleventh Circuit that the expenses saved and profits reaped by a defendant are statutory damages factors. *See Illinois Tool Works Inc. v. Hybrid Conversions*, Inc., 817 F. Supp. 2d 1351, 1355 (N.D. Ga. 2011). Contour's profit and loss statements are highly relevant and must be produced. Please produce them or provide your position by September 25.

***Missing documents and attachments*****:** On a meet and confer over a month ago, we raised an issue that certain documents attached to emails and referenced in other produced documents are missing from Contour's productions. For example, in our July discovery dispute statement to the Court, we identified "underlined paperwork for Louis Vuitton hand-delivered to [Contour's] office" from Contour's emails (Contour_0002920) as documents that have not been produced. You responded that Contour was searching for and producing all hard copy documents located at the Market, but were going to speak to your client to confirm. Please provide an update or otherwise confirm that all relevant hard-copy documents related to the Market (whether located at the Market, or another Contour-affiliated property) have been collected and produced. To the extent we encounter additional missing documents or missing attachments, we will identify them to you on a rolling basis.

***Weekly Synopses:***
During the hearing with the Court last month and on subsequent meet an confers you stated that you were investigating the existence of additional weekly synopses and reports from managers. We have heard nothing on this topic. Please provide an update on your investigation by September 25.

Lucas Westby
NELSON MULLINS RILEY & SCARBOROUGH LLP
Page 2 of 6


**Interrogatory Response Deficiencies**

***Interrogatory No. 1 (corporate structure and ownership)****:*  Contour still has not provided any substantive response to Interrogatory No. 1 regarding Contour's corporate structure and ownership interests.  If you contend that you have produced documents indicating corporate structure and ownership interests, they must be identified here. Please do so by September 25.

***Interrogatory Nos. 2, 5, and 14 (relevant people and descriptions)****:* As discussed in our September 11 correspondence, Contour's responses to Interrogatory Nos. 2 and 5 and your August 16 letter related thereto are deficient. Contour's response does not include numerous other employees and individuals involved with the Old National Discount Mall, as reflected by Contour's own documents and listed in our September 11 letter. In addition, there are chronological gaps for key positions such as manager and security, as identified in our September 11 letter to you. The descriptions of individuals are also incomplete, including for the roles of Messrs. Nathan and Flasher on the "Board of Managers," as well as for individuals allegedly responsible for addressing intellectual property violations. Further, to the extent an individual is employed by a "Contour-affiliated entity," the affiliate must be identified.

***Interrogatory No. 3 (due diligence and purchase of Market)****.*  Contour still has not provided any substantive response regarding due diligence, corporate formation, negotiations, inspections, terms and agreements, third-party interactions and/or materials, and persons and entities involved in the purchase of the Market and Property.  We have raised this deficiency in our letter to Ms. Cayton Chrisman dated March 20, 2024, to which Contour responded in its April 5, 2024 letter that it will supplement the response if additional information is obtained.  Contour must supplement its response accordingly, or otherwise state that it is unaware of any particular circumstances or any additional responsive information.

***Interrogatory No. 4 (business plans and policies for Market)****:* Interrogatory No. 4 asked Contour to describe business and marketing plans, forecasts, campaigns, policies and procedures, related to operation of the Market from January 1, 2017 to present. Contour merely responded that it intended to redevelop the property for commercial use, but said nothing of its plans, policies, and procedures for operating the Market prior to redeveloping it. Clearly, Contour has some plans in place, otherwise it would have immediately closed the Market until redevelopment. Supplementation is required.

***Interrogatory No. 6 (tenant information)****:* Interrogatory No. 6 asked for a discrete set of information related to tenants and subtenants at the Market. Contour merely responded that it would be producing documents. This is not a document request; this is an interrogatory. If Contour intends to invoke Rule 33(d), it must properly do so by identification of the documents *See* 8B Charles Alan Wright & Arthur R. Miller, Fed. Prac. and Proc. Civ. § 2178 (3d ed. 2024). ("[I]t is clear that a simple offer to produce unspecified responsive materials is not sufficient designation to satisfy the rule.").

Lucas Westby
NELSON MULLINS RILEY & SCARBOROUGH LLP
Page 3 of 6

***Interrogatory No. 7 (due diligence of tenants)***.  As we have raised in our letter to Ms. Cayton Chrisman dated March 20, 2024, the Interrogatory seeks not only due diligence conducted prior to the period during which business was conducted, but also ***during*** and ***after*** such period. Specifically, Contour does not specify whether due diligence is conducted during the renewal of the lease agreement, and if so, what steps are taken as part of the due diligence.  Again, if Contour is not aware of any due diligence conducted during and after the period during which business was conducted by each Person or Entity, please provide a statement to that effect.

***Interrogatory No. 9, 11, 15 (investigation and actions taken regarding tenants and counterfeiting)***:  Contour stated in its April 5, 2024 letter that "Mr. Foucha does not keep records to document the date, person, and/or findings of each undercover shopper" and in its First Supplemental Response to Interrogatory No. 9 that "Mr. Foucha immediately evicted the single tenant found offering for sale goods which appeared to be counterfeit."  Please identify the single tenant.

Similarly, Interrogatory No. 15 specifically asked Contour to identify and state the details of any tenants Contour alleges it terminated for selling counterfeit products, but Contour provided no such response. Please identify and describe any tenants that were allegedly evicted due to counterfeiting activities, including any such evicted tenants from when Contour acquired the Market up to the time when Mr. Foucha became the manager on June 1, 2023, and identify any leases and notices to vacate related thereto. If Contour does not identify any tenants and describe the circumstances surrounding eviction, Louis Vuitton will presume that no tenants were evicted. Please also confirm that your response includes all tenants evicted for selling any brand of counterfeit good, not just Louis Vuitton.

Additionally, please identify by Bates number communications with law enforcement stemming from the undercover buys conducted by Mr. Marcus Foucha or any other Contour employee or individual associated at the Mall. To the extent any communications were conducted via phone call, please provide the calls logs and/or voicemail, which we requested in our August 21 letter, and you did not address.  If no communication was made, please provide a statement to that effect. Contour previously stated in its April 5, 2024 letter that it will investigate telephone communications with law enforcement.  Please provide an update on the investigation.

***Interrogatory No. 20 (notifications of counterfeits by trademark owners):*** In response to Interrogatory No. 20, you objected that the scope of this interrogatory "constitutes every single brand of goods sold in the world" and that Contour has not located documents or communications indicating that any other brands or trademark owners contacted Contour regarding counterfeit goods after applying ESI search terms. This is not a document request; it is an interrogatory. Interrogatories are not limited by ESI search terms. Please confirm that your investigation for this interrogatory is not merely limited to the results of ESI search terms, and not limited to any subset of brands or trademark owners.

Lucas Westby
NELSON MULLINS RILEY & SCARBOROUGH LLP
Page 4 of 6

**Interrogatory No. 21 (policy changes from prior owners):** Interrogatory No. 21 asked how and which rules, guidelines, policies, or procedure changed or deviated from the prior owners. As an initial matter, we discussed on a prior meet and confer that Contour as a company can and may have knowledge regarding prior owner's policies. If so, Contour cannot object on that basis. Further, your response was limited to changes (or similarities) in lease agreements. Interrogatory No. 8 references signage posted at the Market and messages from Market managers to tenants, but your Interrogatory No. 21 response does not mention how these policies or procedure have changed from the prior owner. If Contour has knowledge regarding the prior owner's policies and procedures, it must so state.

**Interrogatory No. 22 (annual sales):** As discussed above, Contour's revenues are relevant statutory damages factors. Contour merely referenced monthly rent rolls, which itself are incomplete. Rent rolls for January and February 2021 and the entire years of 2019 and 2020 are missing. Moreover, surely Contour keeps higher level summary financial data in the ordinary course of business other than rent rolls. That information must be included in this response, or otherwise produced and referenced.

**Interrogatory No. 23 (preservation of evidence):** Contour did not respond to Interrogatory No. 23 and merely provided a series of incongruent objections. Louis Vuitton has reason to believe that Contour did not impose proper litigation holds to preserve evidence in this case, which it should have done, at a minimum, as of the filing of the Complaint. Contour has stated that it does not have a document retention policy in response to Request for Production No. 38. Contour has also produced very few documents in this case. Moreover, Mr. Foucha—the current manager of the Market—testified that he did not learn of this case and was not asked to preserve information or materials until a month before his deposition on June 24, 2024. Foucha Dep. Tr. at 282:23–283:9. To the extent Contour objects on privilege, that ground is waived given Mr. Foucha's testimony. Louis Vuitton also does not seek the actual communications, but rather the facts and circumstances surrounding who was notified and when, which are not protected. *Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*, No. 2:11-CV-746-WKW, 2016 WL 9687001, at *4 (M.D. Ala. Jan. 22, 2016) (ordering sworn affidavit of who was notified and when instead of producing litigation hold documents, to avoid privilege concerns). Contour's objection on burden is similarly unpersuasive, as Contour has provided a short list of key contour employees and individuals involved with the Market. Immediate supplementation is required.

**Interrogatory No. 24 (property management databases):** Contour's response appears to be limited to information stored in Yardi, but Interrogatory No. 24 was not so limited. Specifically, Contour's documents appear to show the existence of other property management databases, including but not limited to AppFolio (Contour_0044302); Onsite (Contour_0044289); and Merchant Capture (Contour_0044285), and including the physical computers and laptops stored at the Market and/or used by managers of the Market. Supplementation is required to explain how any of these or other databases were used, what is stored in them, and if they have been searched and produced.

Lucas Westby
NELSON MULLINS RILEY & SCARBOROUGH LLP
Page 5 of 6

**Insurance agreements:** Paragraph 9 of Contour's Initial Disclosures states that "Contour has not identified an insurance agreement under which an insurance business may be liable to satisfy all or part" of a judgment. In apparent response to Document Request No. 39, Contour produced multiple documents appearing to be liability insurance for Contour and the Market (*e.g.*, Contour_0041157, Contour_0041158). Contour must supplement its Initial Disclosures to identify these policies and any other applicable policies. If these policies are no longer active, please so state.

**Document Production Deficiencies**

*Texts:* The agreed upon date for substantial completion of document production was September 16. Contour has produced just 98 new text documents since this dispute was brought to the Court's attention in July, many of which have already been produced before. The Parties agreed to many of the text threads over a month ago. Please provide an update on the status of Contour's text production.

Second, Louis Vuitton is concerned about whether Contour is properly applying the agreed upon protocol. You previously represented at the hearing a month ago that Carla Henderson's "entire text messages were produced." (Aug. 7 Hr'g Tr. at 33:1-5). They were not. You revealed this in subsequent meet and confers and in Contour's improper position statement to the Court on September 13. It appears that Contour actually applied its own set of narrow search terms to her texts, then reviewed and produced relevant texts from that limited universe. In your position statement on September 13, you stated that you are applying the newly agreed upon search terms to her texts, despite your claim to the Court that all of Carla Henderson's texts had been collected and reviewed for relevancy without search terms and despite that all text chains from Carla Henderson's phone with agreed participants are under 500 messages as are supposed to be reviewed without application of search terms under the agreed protocol. Please immediately explain this discrepancy and confirm that you are abiding by the agreed upon text protocol.

We also have not seen any other texts produced from other messaging apps such as WhatsApp. We raised this deficiency in our statement to the Court in July, but otherwise have not heard any response from you. We have only received WhatsApp messages from Marcus Foucha for 5 short portions of the same WhatsApp group notwithstanding Mr. Foucha's testimony that he utilizes it at least once a week. Please confirm that your text collection and review includes other messaging platforms including but not limited to WhatsApp for all custodians.

We have identified the phone numbers of Lt. Robinson (404-761-3131 and 678-979-6143), Officer Conner (773-577-7629), and Sergeant Fields (917-664-3761). You had previously represented that you would look to see if any of the text custodians in this case communicate with them and, if so, to produce responsive communications with these law enforcement numbers. Please confirm that you will collect, review, and produce communications with these numbers in accordance with the text review protocol.

Lucas Westby
NELSON MULLINS RILEY & SCARBOROUGH LLP
Page 6 of 6

**Emails:** To date, you have produced just 261 emails. We find this miniscule volume to be severely lacking in a case of this size and given the relevant timeframe and number of custodians. For example, there are virtually no emails between custodians discussing due diligence or acquisition of the mall, other than between lenders and purchasing parties. Please confirm that you are not withholding responsive emails and that your productions are complete.

**Call logs:** As discussed elsewhere above, in our July discovery dispute statement to the Court, and in our August 21 correspondence, we requested that call logs be produced between relevant participants. We understand that this data is already available in Cellebrite reports. Please confirm you are collecting and producing call logs.

**Document Request No. 56 and 57 (personnel files):** Contour claims that it has already produced documents relating to its employees and independent contractors. But it has not. Contour has not produced any employment or service contracts between non-Contour employees such as Hunter Security, Amanda Rivera, and others. Personnel files of employees and contractors are also relevant given the turnover of employees responsible for managing the Market at various times, including those involved in improper conduct such as Marshal Rhodes, who you claim was terminated and who multiple witnesses testified accepted bribes from tenants. Personnel files must be produced, and can appropriately be redacted to protect personal information consistent with the protective order in this case.

*  *  *

Regards,

*Michael J. Allan*
Michael J. Allan
Steptoe & Johnson LLP
1330 Connecticut Ave., NW
Washington, D.C. 20035
(202) 429-6749
mallan@steptoe.com

*John H. Zacharia*
John H. Zacharia
Zacharia Law PLLC
1701 Pennsylvania Ave., NW,
Suite 200
Washington, D.C. 20006
(202) 845-5091
john@zacharialaw.com